# COURT OF ERRORS AND APPEALS

## MARCH TERM, 1856.

Between JOHN YARD, jun., appellant, and THE PACIFIC MUTUAL INSURANCE COMPANY and JOSEPH C. POTTS, president, &c., respondents.

Admitting it to be true that the capital stock of an insurance company was not *bona fide* paid in, and that the company commenced the business of insurance in violation of the express provision of the charter, yet this court ought not to interfere with suits brought upon bonds in a court of law for the purpose of aiding the complainants to avoid their payment, where it appears that the bonds were given in payment for the stock of the company, that the complainant received his certificate of stock, and that upon these bonds, as a portion of the capital, the company embarked in business.

The question is a legal one, and the complainant may avail himself of it, as far as it is a defence in the suit at law.

Upon the ground that it is against public policy to permit the company to enforce a bond given in violation of law, the complainant may have the right to *defend* himself at law and in equity, and yet not be entitled, as a complainant in this court, to be relieved against their payment.

A complainant who invokes the equitable powers of this court will be compelled to do equity before he obtains its aid.

The charter declared that the capital stock should be actually paid in before it shall be lawful for the said company to commence the business of insurance, and the company is authorized to invest its capital in public stocks, bonds, and mortgages, and such other securities as the directors may approve. It appeared that the whole capital was securely invested; that the subscription to the stock was made in *good faith ;* that the company went on and insured upon the faith of this capital. It was held that individuals who gave their obligations to constitute this capital could not repudiate them on the ground that the stock had not been subscribed and paid in. The securities are not void because, instead of going through the formality of receiving the money, and then paying it back and taking securities, the directors took the securities without this ceremony.

One stockholder in a company, because he has an unsettled account with them, or any other matter of dispute, has no right to bring a company into this court to settle all their accounts as a company.

When the complainant does equity, and pays up the installments already assessed and the costs of the suit at law, the court will protect him against any assessment not levied upon other stockholders.

———

The case sufficiently appears in the Chancellor's opinion.

The cause was argued in the Court of Chancery, in the term of October, 1854, by *William Halsted* and *Mercer Beasley,* counsel for the complainants, and *William L. Dayton,* of counsel for the defendant, upon the pleadings filed.

On the eighteenth day of October, 1854, a final decree was made ordering that the complainant's bill be dismissed, and the injunction dissolved. From this decree an appeal was taken.

The Chancellor furnished the court with the following opinion, as containing the reasons for his decree.

WILLIAMSON. C. The Pacific Mutual Insurance Company hold two bonds of the complainant, one conditioned for the payment of four thousand dollars, and the other conditioned for the payment of two thousand dollars : they are both secured by mortgage. After the day mentioned for payment, the company commenced an action at law upon the bonds in the Circuit Court of the county of Mercer. Upon filing the bill of complaint, one of the injunction masters, upon application to him, allowed an injunction to issue restraining the further prosecution of that suit. The defendants have answered the bill, and now move to dissolve the injunction.

The first allegation in the bill, and one which is made a distinct ground upon which the complainant claims the protection of the court is the following : by the second section of the act incorporating this company, it is enacted, " that the capital stock of said company shall be two hundred and fifty thousand dollars, divided into shares of fifty dollars each, and that the whole of said

capital stock shall be actually paid in before it shall be lawful for said company to commence the business of insurance." It is further enacted, by the tenth section of the act, that the company may invest their capital and accumulating premiums, from time to time, in public stocks, bonds, and mortgages, and such other securities as the directors may approve. By another section of the act, four individuals are named as commissioners to open books for the subscription of the capital stock, and are authorized, as soon as two thousand shares are subscribed, to appoint an hour and place for holding the first election for directors. After setting out the seportions of the act, the bill states that the capital stock was never actually paid in, and that therefore the company had no right to commence the business of insurance ; that in lieu of the cash which the said charter required to be paid for subscriptions to the capital stock of the said company, the directors of the said company, in direct violation of the provisions of the second section of the said act, and in fraud of the said act, for the purpose of evading and avoiding the provisions of the said act, took in payment of subscriptions for stock in said company the bonds and mortgages of individuals, and in gross violation of their duty as directors, agreed to receive the bonds and mortgages of individuals instead of cash, in payment of such subscriptions for stock, and to consider the same as part of their capital stock ; that the complainant, relying upon the representations of Joseph C. Potts, president of the company, that he, the complainant, could lawfully and rightfully pay for any amount of stock which he might subscribe for without paying any money, but simply by giving his bond and mortgage for the amount, and upon the further representation that he, the complainant, would not be called on to pay any money, and that the dividends on the stock would more than pay the interest on his bonds and mortgage, and that the business of the company would be very profitable, was induced to give his

said two bonds and the mortgage to the company. The bill further alleges, on this part of the case, that it was agreed between the complainant and Joseph C. Potts, president, that the bonds were not to be paid until the same were required for the purpose of paying the losses which might occur by fire to houses, buildings and property lawfully insured. It is then alleged that the capital stock of $250,000 never having been actually paid in, the company was never authorized to commence the business of insuring, and that all the policies and contracts of insurance made by the company are illegal, and that therefore the company has no right to the bonds of the complainant, for the purpose of paying any losses on such policies or contracts. The bill then alleges that the bonds were given for no other consideration than in payment of the amount of stock which the complainant had agreed to subscribe, and for which stock he received a certificate of the president, and countersigned by the treasurer. The bill alleges, that the complainant never subscribed for any stock on the books of the company, at the time the books were opened for the purpose by the commissioners, and insists that the president and treasurer had no right to issue any certificate of stock, except for such as was regularly subscribed for before the commissioners. The bill concludes this part of the case by alleging that the complainant has been informed, and believes, that no books of subscription were ever opened by the commissioners named in the act, and that the whole of the pretended subscription was a fraud upon the law, and that Joseph C. Potts, president, had no authority to accept a bond and mortgage for the stock of the company, and that, therefore, the bonds and mortgage are void.

These statements of the bill present to us *one* feature of the complainant's case, and may be disposed of as a distinct ground upon which the complainant relies for equitable relief.

Admit it to be true, that the capital stock of $250,000

was not *bona fide* paid in, and that the company did commence the business of insurance in violation of the express provision of the charter, ought this court to interfere with the suits brought upon these bonds in a court of law, for the purpose of aiding the complainants to avoid their payment?

In the first place, the question is a legal one, and the complainant may avail himself of it, as far as it is a defence in the suit at law. But, in the second place, if it is a *legal* defence, it is not one which a court of equity will aid a party in making. The bonds were given in the year 1851, in payment for the stock of the company, and the complainant received his certificate of stock. Upon these bonds, as a portion of their capital, the company embarked in business. The complainant stood ready to receive the gains of the speculation. He has been disappointed; and now, when called upon to pay his bonds in order to enable the company to meet their losses, he sets up that the company insured upon the faith of his bonds when they should have compelled him to pay the money, instead of receiving his obligations. Now, if it is true that he is not legally liable upon these bonds, upon the ground that it is against public policy to permit the company to enforce a bond given in violation of law, the complainant may have the right, which this court can not deny him, to *defend* himself at law and in equity upon this ground, and yet not be entitled, as a complainant in this court, to be relieved against their payment. A defendant may have a good defence, of which, as a defendant, he may have the benefit, but of which, as a complainant, he could not avail himself, except upon such equitable terms as the court might impose. A complainant who invokes the equitable powers of this court, will be compelled to do equity before he obtains its aid. In the case of *Green* v. *Seymour* (3 *Sand. Ch. R.* 285), a case relied upon with much confidence by the complainant's counsel, the court decided that a corporation cannot

eι orce a mortgage which it has obtained by a transfer taken contrary to the express provision of its charter, and that the mortgagor may avail himself of such illegality, and thereby show that the corporation has no valid title to the mortgage. In that case the defendant, being brought into court, had a right to make the defence, which the court could not refuse him. Had he been the complainant, seeking the equitable powers of the court to relieve him, the court might have controlled his case without regard to strict law. The principle is a familiar one. Usury is a good defence against the foreclosure of a mortgage; but if the mortgagee commenced suit upon the bond and mortgage in a court of law, a court of equity will not remove the case from another jurisdiction to aid a party in such a defence. It would not relieve a complainant in such a case from the usury, without compelling him to do equity by paying the amount actually due, discounting the sum usuriously taken. It appears to me that, under the circumstances of this case, the court ought not to interfere with the proceedings at law to aid the complainant in the legal defence (if it be one) which he seeks to set up against the payment of his bonds; or, in other words, the court ought not, upon such an equity, to change the forum of litigation which the adversary has selected. But is the defence a good one, either at law or in equity?

The charter declares that the capital stock shall be actually paid in before it shall be lawful for the said company to commence the business of insurance, and the company is authorized to invest its capital in public stocks, bonds, and mortgages, and such other securities as the directors may approve. The object the legislature had in view was to have a *bona fide* capital of $250,000 provided and safely secured for the benefit of persons who should become insured. If the company had had the $250,000 paid in, in specie, and had turned around immediately, and invested it, it is admitted that the transaction would have been in compliance with the charter, and

2 s*

that the company might have proceeded at once to the business of insurance. If, then, the capital stock of $250,-000 was subscribed, and the directors, instead of going through the formality of receiving the money, and then paying it back and taking securities, took the securities without this ceremony, were the provisions of the charter violated, and are all these securities so taken void? It appears that the whole $250,000 capital was securely invested; that the subscription to the stock was made in good faith; that the company went on and extensively insured upon the faith of this capital. Should the individuals who gave their obligations to constitute this capital be permitted to repudiate them? In my judgment the complainant cannot be relieved from the payment of his bonds on this ground in a court of equity.

But the complainant alleges actual fraud in the procuring of his bonds and mortgage.

*First.* That Joseph C. Potts, the president of the company, represented to him that he might lawfully subscribe for the stock and pay for it in his bonds. This was a mere matter of opinion; it was the judgment of Mr. Potts upon the law. The complainant had the charter before him. There was no misrepresentation of facts made to the complainant.

*Second.* That Mr. Potts represented that the complainant would not be called upon to pay any money, and that the dividends on the stock would more than pay the interest on the bonds, and that the business of the company would be very profitable. The answer admits, in substance, that these representations were made to the complainant, but denies that they were made fraudulently. Mr. Potts himself evinced his confidence in his assertions by taking upwards of $15,000 of the stock of the company. This is not such a misrepresentation as will justify the interposition of a court of equity. *Story's Eq.* § 191. If the company, or Mr. Potts, as their lawful agent, had entered into a parol agreement with the complainant that

the dividends of the stock should meet the interest on the bonds, and that his bonds should be paid out of the profits of the business, the obligor could not avail himself of such a contract, either in this court or a court of law. A valid instrument cannot thus be destroyed by parol evidence; parol evidence for such a purpose would have been inadmissible.

Every allegation of actual fraud charged in the bill is negatived by the answer.

There is one other ground upon which the complainant asks the interference and protection of the court. The whole capital stock of $250,000 is secured by the bonds and mortgages of different individuals. The company having met with heavy losses, it became necessary to make an equitable assessment upon the respective amounts due from these debtors, in order to enable the company to meet its liabilities. Four assessments, of ten per cent. each, have been made, and out of sixty subscribing stockholders only six, including in this number the complainant, have refused to make payment. The company, on account of the disasters they have met with, have ceased doing business. They are unable to tell what amount will be required upon the bonds and mortgages they hold to meet their liabilities. The complainant asks, first, that an account may be taken in this court of all the concerns of the company, and, as he is liable only to pay his proportion of any losses, that the suit at law may be restrained until such accounts are taken and such proportion ascertained. But why should the defendants be compelled to settle their accounts in this court? It would only embarrass the company, and be a useless expense. One stockholder in a company, because he has an unsettled account with them, or any other matter of dispute, has no right to bring a company into this court to settle all their accounts as a company.

But, second, the complainant insists that all the company are entitled to receive of him is the amount of four

instalments of ten per cent., being the same amount required of the other bondholders. At law, the company may enforce the payment of the whole amount due upon the bonds, while, it is true, in equity they are entitled to call for no more than the like assessment they have made upon the other stockholders. When the complainant does equity the court will protect him. Let him pay up the instalments already assessed and the costs of the suit at law, and this court will protect him against any assessment not levied upon other stockholders.

The company demand of him nothing more than his equal assessment. They offered, and are still willing to take from him his fair proportion. They ask nothing more. He compelled them to sue on the bonds. He must place himself right in court before it will interfere on his behalf.

The injunction must be dismissed with costs.

The appeal was argued by

*Halsted* and *Beasley*, for appellant.

*Dayton*, for respondent.

The opinion of the court was delivered by

ELMER, J.   Whatever might be the result if the question was directly before the court whether the company was ever legally organized, it is clear that the appellant cannot now dispute that fact. He gave to them his bonds and mortgages, thus acknowledging them to be a corporate body, and calls them before the court as such. If the proceeding was illegal, he was a party to that illegality, and cannot invoke the powers of a court of equity to aid him in defending himself from the consequences of his own voluntary acts.

So far from being against public policy to enforce the payment of the appellant's bonds, public policy requires

that it be done, otherwise entirely innocent parties would suffer. The allegations of fraud contained in the bill are distinctly and fully denied in the answer. The money sought to be recovered is required to pay losses incurred in the regular business of the company, and the appellant is required to pay no more of them than his proper proportion. Before he can ask relief, he must offer to do what is equitable and just on his part, that is pay the instalments assessed on him and the costs of the suit at law. The decree of the Chancellor must be affirmed with costs.

Decision affirmed by the following vote:

*For affirmance*—CHIEF JUSTICE, JUDGES ARROWSMITH, RISLEY, CORNELISON, HAINES RYERSON, ELMER, OGDEN, VALENTINE, WILLS.

*For reversal*—None.

CITED *in Brewer v. Marshall*, 3 *C. E. Gr.* 344.